UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK _  _
JENNIFER L. WHITAKER,

                    Plaintiff,                    21 Civ. 840-PKC

        -against-                    DECLARATION OF
                                      PETER M. LEVINE
ON THE RIGHT TRACK SYSTEMS, INC.,

                    Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

        PETER M. LEVINE declares under the penalty of perjury pursuant to 28 U.S.C.

§ 1746 as follows:

        1.        I am a member of the Bar of this Court and am counsel for the defendant,

On the Right Track Systems, Inc. I have personal knowledge of the facts contained in this

Declaration, which I make in support of defendant's motion to dismiss the Complaint.

        2.        Attached as Exhibit A to the accompanying Declaration of John Benis

is U.S. Patent No. 7,761,935. I downloaded the '935 Patent from the website maintained by

the United States Patent and Trademark Office [uspto.gov].

        3.        Attached as Exhibit D to this Declaration is the Certificate of

Cancellation for Curtain Cuts, LLC. I downloaded the Certificate from the website maintained

by Commonwealth of Virginia State Corporation Commission [scc.virginia.gov].

        4.        Attached as Exhibit E to this Declaration is the Entity Information for

Curtain Cuts, LLC. I downloaded the Entity Information from the website maintained by

Commonwealth of Virginia State Corporation Commission.

        5.        Attached as Exhibit F to this Declaration is the Complaint, which itself

has two exhibits. Exhibit 1 to the Complaint is the Patent Assignment from Jennifer Whitaker

to Curtain Cuts, LLC. Exhibit 2 is the Patent License Agreement between Curtain Cuts, LLC

and On the Right Track Systems, Inc.

I declare the foregoing is true and correct.

Executed at New York, New York, April 4, 2021.

PETER M. LEVINE

# EXHIBIT D



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

**Office of the Clerk**

May 23, 2013

JENNIFER L. WHITAKER
104 SWEET MAGNOLIA LANE APT 4110
EATONTON, GA 31024

### RECEIPT

RE:     Curtain Cuts, LLC

ID:     S344074 - 2

DCN:    13-05-10-0231

Dear Customer:

This receipt acknowledges payment of $25.00 to cover the fee for filing with this office articles of cancellation for the above-referenced limited liability company.

The certificate of cancellation was issued with an effective date of May 23, 2013.  A copy of the certificate is enclosed.

 If you have any questions, please call (804) 371-9733 or toll-free in Virginia, (866) 722-2551.

Sincerely,

Joel H. Peck
Clerk of the Commission

RECEIPTLC
LLCL
CISLFD

P.O. Box 1197, Richmond, VA 23218-1197
Tyler Building, First Floor, 1300 East Main Street, Richmond, VA 23219-3630
Clerk's Office (804) 371-9733 or (866) 722-2551 (toll-free in Virginia) www.scc.virginia.gov/clk
Telecommunications Device for the Deaf-TDD/Voice: (804) 371-9206

**ENTITY NAME:** Curtain Cuts LLC

Name availability done in:

Initials     Conflict with ID #:

eFile: _____     _____

CIS: _____     _____

**ENTITY ID #:** _____

DCN #: 130510  0231

5344 0741

5.22   $25

CHARTER EXAMINER WORKSHEET

| | | |
|---|---|---|
| CHARTER / ENTRANCE FEE | _____ | JURISDICTION: _____ |
| FILING FEE | 25 | |
| EXPEDITE FEE(S) | _____ | **SPECIAL EFFECTIVE DATE / TIME** |
| TOTAL FEES | 25 | INDUSTRY CODE: _____ |

AMENDMENT OR OTHER INFORMATION:          SEND COPY TO:

OK J&O 5/23/13

Dom LLC canc.

COPYWORK REQUESTED:                    CORRESPONDENT:

_____                        _____

_____                        _____

_____                        _____

AMOUNT AVAILABLE                       _____ MAIL
FOR COPYWORK:                          _____ CALL _____
                                       _____ FAX _____
_____                        _____ FED EX _____

REVISED 08/11

| FOR OFFICE USE ONLY | FOR OFFICE USE ONLY | FOR OFFICE USE ONLY | FOR OFFICE USE ONLY |

F-12

```
CIS0368                        CIS                        05/21/13
1    58  LLCM3220           LLC DATA INQUIRY                 14:51:49
   LLC ID: S344074 - 2  STATUS: 00  ACTIVE          STATUS DATE: 01/21/13
   LLC NAME:  Curtain Cuts, LLC_____
             _____
DATE OF FILING: 11/09/2010  PERIOD OF DURATION:          INDUSTRY CODE: 00
STATE OF FILING:  VA VIRGINIA           MERGER INDICATOR:
                     CONVERSION/DOMESTICATION INDICATOR:
             P R I N C I P A L   O F F I C E   A D D R E S S
      STREET:  11452 PINEDALE DR

      CITY:  GLEN ALLEN             STATE:  VA  ZIP:  23059-0000
        R E G I S T E R E D   A G E N T   I N F O R M A T I O N
   R/A NAME:  JENNIFER L. WHITAKER

      STREET:  11452 PINEDALE DRIVE
                                                        RTN MAIL:
      CITY:  GLEN ALLEN             STATE:  VA  ZIP:  23059-0000
R/A STATUS: 2 O/D OF CORP M/M  EFF DATE:  02/10/12 LOC: 143  HENRICO COUNTY
      YEAR       FEES       PENALTY    INTEREST      BALANCE
       12        50.00       25.00
COMMAND:  .................................................................
4AÛ                                                       05,016B
```

1305080042

```
CIS0368                          CIS                    05/21/13
1    58  LLCM3240           MICROFILM INQUIRY           14:51:52

    LLC ID: S344074 - 2    LLC STATUS: 00  ACTIVE
  LLC NAME: Curtain Cuts, LLC_____
           _____
COURT LOCALITY: 143 HENRICO COUNTY

          MICROFILM NO    DOCUMENT TYPE         DATE      PAGES
          12 02 51 0555   LLRA > LLC REGISTERED  02/10/12    2
          10 11 05 0022   LLNC > NEW LLC         11/09/10    4




 COMMAND:  ..................................................
4AÛ                                                    06,014B
```

5305080042

S344074 - 2

# COMMONWEALTH OF VIRGINIA
## STATE CORPORATION COMMISSION

AT RICHMOND, MAY 23, 2013

The State Corporation Commission has found the application for a certificate of cancellation submitted on behalf of

# Curtain Cuts, LLC

to comply with the requirements of law, and confirms payment of all required fees.  Therefore, it is ORDERED that this

# CERTIFICATE OF CANCELLATION

be issued and admitted to record with the application for cancellation in the Office of the Clerk of the Commission, effective May 23, 2013.

STATE CORPORATION COMMISSION

By

James C. Dimitri
Commissioner

13-05-10-0231
LLCLACPT
CISLFD

## COMMONWEALTH OF VIRGINIA
## STATE CORPORATION COMMISSION

**LLC-1050**
**(04/09)**

### ARTICLES OF CANCELLATION
### OF A VIRGINIA LIMITED LIABILITY COMPANY

The undersigned, on behalf of the limited liability company set forth below, pursuant to § 13.1-1050 of the Code of Virginia, states as follows:

1. The name of the limited liability company is

   Curtain Cuts LLC

2. The limited liability company's certificate of organization issued by the State Corporation Commission was effective on 11/09/2010.

3. These articles of cancellation are submitted for filing for the following reason(s):

   Business closed.

4. The limited liability company has completed the winding up of its affairs. **(See instructions.)**

5. Any other information the members determine to include herein (optional): NA

Executed in the name of the limited liability company by:

_Jennifer L Whitaker_                     5/7/13
(signature)                                    (date)

Jennifer L. Whitaker          Manager
(printed name)                 (title (e.g., manager or member))

S344074                       804-334-8050
(limited liability company's SCC ID no. (optional))    (telephone number (optional))

CHECK IF APPLICABLE **(see instructions)**:

☐ The person signing this document on behalf of the limited liability company has been delegated the right and power to manage the company's business and affairs.

*(The articles must be executed in the name of the limited liability company by any manager or other person who has been delegated the right and power to manage the business and affairs of the limited liability company, or if no managers or such other persons have been selected, by any member of the limited liability company, or if the limited liability company was formed without any managers or members and no members have been admitted, by an organizer.)*

**PRIVACY ADVISORY:** Information such as social security number, date of birth, maiden name, or financial institution account numbers is NOT required to be included in business entity documents filed with the Office of the Clerk of the Commission. Any information provided on these documents is subject to public viewing.

## SEE INSTRUCTIONS ON THE REVERSE

Provide a name and mailing address for sending correspondence regarding the filing of this document. (If left blank, correspondence will be sent to the registered agent at the registered office.)

Jennifer L Whitaker
(name)

104 Sweet Magnolia Lane, Apartment 4110; Eatonton, GA 31024
(mailing address)

# EXHIBIT E

# Entity Information

## Entity Information

| | |
|---|---|
| Entity Name: | Curtain Cuts, LLC |
| Entity ID: | S3440742 |
| Entity Type: | Limited Liability Company |
| Entity Status: | **Inactive** |
| Formation Date: | 11/09/2010 |
| Reason for Status: | Voluntarily Canceled - Cannot Reinstate |
| VA Qualification Date: | 11/09/2010 |
| Status Date: | 05/23/2013 |
| Industry Code: | 0 - General |
| Period of Duration: | Perpetual |
| Jurisdiction: | VA |
| Annual Report Due Date: | N/A |
| Registration Fee Due Date: | Not Required |
| Charter Fee: | N/A |

## Registered Agent Information

| | |
|---|---|
| RA Type: | Individual |
| Locality: | HENRICO COUNTY |
| RA Qualification: | Officer or Director of a Corporation that is a Member or Manager of the Limited Liability Company |
| Name: | JENNIFER L. WHITAKER |
| Registered Office Address: | 11452 PINEDALE DRIVE, GLEN ALLEN, VA, 23059 - 0000, USA |

## Principal Office Address

Address:

11452 PINEDALE DR, GLEN ALLEN, VA, 23059 - (https://www.scc.virginia.gov/clk/clk_contact.aspx)
0000, USA        (https://www.facebook.com/VirginiaStateCorporationCommission)

(https://twitter.com/VAStateCorpComm)

Principal Information

Management Structure:   N/A

Filing History        RA History        Name History        Previous Registrations

Garnishment Designees

( Back )  ( Return to Search )  ( Return to Results )

Back to Login

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER L. WHITAKER, | |
| Plaintiff, | Case No. |
| v. | COMPLAINT |
| | (JURY TRIAL DEMANDED) |
| ON THE RIGHT TRACK SYSTEMS, INC., | |
| Defendant. | |

Jennifer L. Whitaker, by and through her attorneys, Burns & Schultz LLP, for her

complaint against defendant On The Right Track Systems, Inc., states:

## PARTIES

1.      Plaintiff Jennifer L. Whitaker ("Plaintiff" or "Whitaker") is a resident of the State of

Georgia, residing at 150 The Preserve Drive, Unit 1A, Athens, Georgia 30606.

2.      Defendant On The Right Track Systems, Inc. ("Defendant" or "OTRTS") is a New

York corporation with its principal place of business at 174 Hudson Street, New York, New York

10013.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

complete diversity exists between Plaintiff and Defendant and the amount of controversy, exclusive

of interest and costs, exceeds the sum of $75,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. 1391 because Defendant resides

in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's

claims occurred in this judicial district.

## FACTUAL BACKGROUND

5.      On July 27, 2010, Whitaker obtained a patent as the inventor of a shower curtain with an integral flap for accommodating a tub transfer bench from the United States Patent Office, U.S. Patent No. 7,761,935 ("'935 Patent").

6.      OTRTS is in the business of manufacturing, distributing, and selling patented cubicle curtain track systems and cubicle curtains for the healthcare industry.

7.      On or about October 24, 2010, Whitaker sent an e-mail to OTRTS seeking to find a source to purchase fabric and to manufacture her patented shower curtain.

8.      On or about October 25, 2010, Keil Merrick ("Merrick") of OTRTS responded to Whitaker's e-mail, informing Whitaker that OTRTS had manufactured and sold over 10 million shower curtains and would be happy to explore a partnership with Whitaker.

9.      On or about November 5, 2010, Merrick e-mailed Whitaker and provided Whitaker with what Merrick termed a "Draft Agreement" outlining the terms of the financial relationship between OTRTS and Whitaker.

10.      On or about November 9, 2010, Whitaker formed Curtain Cuts LLC ("Curtain Cuts"), a Virginia limited liability company. At all relevant times, Whitaker solely owned Curtain Cuts.

11.      On or about December 6, 2010, Merrick e-mailed Whitaker the terms of a contract between OTRTS and Whitaker.

12.      On or about January 18, 2011, through a Patent Assignment agreement, Whitaker assigned the '935 Patent to Curtain Cuts and Curtain Cuts' successors and assigns. A true and correct copy of the Patent Assignment is incorporated into this Complaint and attached as Exhibit 1.

13.     Effective on or about May 23, 2013, the Commonwealth of Virginia State Corporation Commission voluntarily cancelled Curtain Cuts as a limited liability company.  At that time, Whitaker, as the successor and/or assignee of Curtain Cuts, became the legal owner of the '935 Patent.

14.     Effective January 31, 2011, Whitaker, through her assignee Curtain Cuts, entered into a Patent License Agreement ("License Agreement") with OTRTS.  A true and correct copy of the License Agreement is incorporated into this Complaint and attached as Exhibit 2.

15.     As the assignor of the '935 Patent to Curtain Cuts, the parties intended that the License Agreement was entered into for Whitaker's benefit, and Whitaker was an intended third-party beneficiary of the License Agreement.

16.     Pursuant to Section 11.1 of the License Agreement, and/or as a matter of law, upon Curtain Cuts' voluntary cancellation as a Virginia limited liability company on or about May 23, 2013, Whitaker, as Curtain Cuts' successor and/or assignee, succeeded to Curtain Cuts' business, and all of Curtain Cuts' assets, benefits, and contractual rights and obligations, including all rights and obligations arising out of the License Agreement.

17.     Pursuant to Section 2.1 of the License Agreement, OTRTS was granted an exclusive license under the Patent to make, use, offer to sell, sell, and import Products related to the Patent.  In return, pursuant to Section 3 of the License Agreement, OTRTS was obligated to pay a royalty of seven percent (7%) of the Net Sales Price of all Products sold under the license as well as a commission of ten percent (10%) of the Net Sales Price for sales made to businesses, and fifteen percent (15%) of the Net Sales Price for sales to individuals.

18.     Section 4.1 of the License Agreement provided that in addition to the royalties owed pursuant to Sections 3.2 and 3.3 of the Agreement, OTRTS was obligated to pay a minimum royalty for the following calendar years as follows:

| Calendar Year | Minimum Royalty |
|---|---|
| 2014 | $23,750.00 |
| 2015 | $26,250.00 |
| 2016 | $27,500.00 |
| 2017 | $27,500.00 |
| 2018 | $27,500.00 |
| 2019 | $27,500.00 |
| 2020 | $27,500.00 |

19.     Section 5.1 of the License Agreement provided OTRTS is required to pay the minimum royalty for each year that a minimum royalty is owed on or before the last day of the following January of the year it is owed.

20.     Since the License Agreement was entered into in 2011, OTRTS paid Whitaker personally and directly royalties and commissions.  However, OTRTS failed to pay the required minimum royalty for each year, and OTRTS is obligated to pay, and owes, Whitaker the following amounts for minimum royalties pursuant to the License Agreement:

| Calendar Year | Minimum Royalty | Royalty Paid | Amount Owed | Due Date |
|---|---|---|---|---|
| 2014 | $23,750.00 | $12,828.90 | $10,921.10 | 1/31/2015 |
| 2015 | $26,250.00 | $1,851.27 | $24,398.73 | 1/31/2016 |
| 2016 | $27,500.00 | $1,547.81 | $25,952.19 | 1/31/2017 |
| 2017 | $27,500.00 | $3,139.92 | $24,360.08 | 1/31/2018 |
| 2018 | $27,500.00 | $3,820.76 | $23,679.24 | 1/31/2019 |
| 2019 | $27,500.00 | $4,817.55 | $22,682.45 | 1/31/2020 |
| 2020 | $27,500.00 | $4,483.23 | $23,016.77 | 1/31/2021 |
| | | Total Owed | $155,010.56 | |

21.     At all relevant times, OTRTS knew of the voluntary cancellation of Curtain Cuts as a Virginia limited liability company and never objected to Whitaker assuming to all rights, benefits, and obligations of Curtain Cuts pursuant to the terms of the License Agreement.

22. At all relevant times, OTRTS knew and recognized Whitaker was an intended third-party beneficiary to the License Agreement, and as such, OTRTS had a duty an obligation to pay Whitaker for all sums due and owning pursuant to the terms of the License Agreement.

23. At all relevant times, OTRTS knew and recognized Whitaker was the successor or assignee of Curtain Cuts and as such, OTRTS had a duty an obligation to pay Whitaker for all sums due and owning pursuant to the terms of the License Agreement.

24. At all relevant times, Whitaker assumed all rights and obligations arising under the License Agreement.

25. At all relevant times, OTRTS paid all royalty payments due under the terms of the License Agreement directly to Whitaker personally.

26. At no time did OTRTS pay royalties owed pursuant to the License Agreement to Curtain Cuts.

27. At all relevant times, for the royalties OTRTS paid pursuant to the terms of the License Agreement, OTRTS issued 1099-MISC tax forms to Whitaker personally.

28. At no time did OTRTS issue any tax form to Curtain Cuts for royalty payments made pursuant to the License Agreement.

## COUNT I
### (Failure to Pay Minimum Royalties)

29. OTRTS breached the License Agreement by failing to pay the minimum royalties required to be paid pursuant to the terms of the License Agreement.

30. As the successor to Curtain Cuts, the assignee of Curtain Cuts, and/or an intended third-party beneficiary of the Agreement, Whitaker succeeded to Curtain Cuts' rights and interests in the License Agreement, and OTRTS is obligated to pay, and owes, Whitaker the minimum royalties due under the terms of the License Agreement.

31.     Whitaker demanded payment from OTRTS of the minimum royalties due, but OTRTS refused to pay.

32.     As a result of OTRTS's breach of its obligation to pay minimum royalties, Whitaker is entitled to judgment against OTRTS for all unpaid minimum royalties for the past six years, plus interest.

## COUNT II
### (Unjust Enrichment)

33.     Whitaker repeats and realleges each and every allegation contained in paragraphs 1 – 32 of this Complaint as if fully set forth in this complaint.

34.     OTRTS benefited, and is continuing to benefit, at the expense of Whitaker, from the assignment of the '935 Patent to OTRTS pursuant to the License Agreement and its failure to pay the minimum royalties due pursuant to the terms of the License Agreement.

35.     Equity and good conscience require that the amounts OTRTS owed and retained for the minimum royalties be restored to Whitaker, and that OTRTS be required to pay Whitaker damages for all minimum royalty payments OTRTS failed to pay pursuant to the License Agreement.

36.     Whitaker demanded payment from OTRTS of the minimum royalties due, but OTRTS refused to pay.

37.     Whitaker is entitled to judgment against OTRTS for all unpaid minimum royalties for the past six years, plus interest.

## COUNT III
### (Quantum Meruit)

38.     Whitaker repeats and realleges each and every allegation contained in paragraphs 1 – 37 of this Complaint as if fully set forth in this complaint.

39.     Whitaker, as the successor or assignee of Curtain Cuts, or as a third-party beneficiary of the License Agreement, provided valuable consideration and benefits to OTRTS through the assignment of the '935 Patent to OTRTS.

40.     OTRTS accepted the consideration and benefits provided to it by Whitaker through the assignment of the '935 Patent.

41.     Whitaker and OTRTS reasonably expected OTRTS to pay all royalty and minimum royalty payments due pursuant to the License Agreement to Whitaker, as the successor or assignee of Curtain Cuts, or as a third-party beneficiary of the License Agreement.

42.     Whitaker is entitled to judgment against OTRTS for all unpaid minimum royalties for the past six years, plus interest.

**WHEREFORE,** plaintiff Jennifer L. Whitaker respectfully requests that the Court award her the following relief:

(a)     With respect to Count I, that the Court enter judgment against OTRTS for unpaid minimum royalty payments in an amount believed to be at least $155,010.56;

(b)     With respect to Count II, that the Court enter judgment against OTRTS for unpaid minimum royalty payments in an amount believed to be at least $155,010.56;

(c)     With respect to Count III, that the Court enter judgment against OTRTS for unpaid minimum royalty payments in an amount believed to be at least $155,010.56;

(d)     Pre-judgment and post-judgment interest as provided by law;

(e)     For such other and further relief as the Court deems just and proper.

Dated:  January 29, 2021

**BURNS & SCHULTZ LLP**

_Andrew Burns_

Andrew M. Burns
179 Sully's Trail, Suite 202
Pittsford, New York 14534
Telephone:  (585) 385-7907
Facsimile:  (585) 625-0591
aburns@burnsandschultz.com

Attorneys for plaintiff Jennifer L. Whitaker

# EXHIBIT 1

## PATENT ASSIGNMENT

This PATENT ASSIGNMENT (this "Assignment"), dated as of January 18, 2011 (the "Effective Date"), is executed and delivered by Jennifer Whitaker, an individual residing at 11452 Pinedale Drive, Glen Allen, Virginia, 23059 (the "Assignor"), to Curtain Cuts LLC, a Virginia limited liability company (the "Assignee").

WHEREAS, Assignor owns all right, title and interest in and to the Patent (as defined below); and

WHEREAS, the Assignor and the Assignee desire to centralize the business related to the Patent in the United States of America and, therefore, desire that the Patent be conveyed by the Assignor to the Assignee; and

WHEREAS, the Assignor and the Assignee have agreed to execute and deliver this Assignment.

NOW, THEREFORE, in consideration of the premises and mutual covenants and the agreements herein set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor and the Assignee, intending to be legally bound, hereby agree as follows:

1.      Assignment. The Assignor hereby sells, assigns, conveys, transfers and delivers to the Assignee, its successors and assigns, all of the Assignor's worldwide rights, title and interests in, to and under the patent listed on Schedule 1 (the "Patent"), and any and all renewals and extensions thereof that may hereafter be secured under the laws now or hereafter in effect in the United States and in any other jurisdiction, for the Assignee's own use and enjoyment, as fully and entirely as the same would have been held and enjoyed by the Assignor if this assignment and sale had not been made, together with all income, royalties, or payments due or payable as of the date of this Assignment or thereafter, including, without limitation, any such payments resulting from past, present or future infringement or other unauthorized use of the Patent, together with the right to sue for and collect the same.

2.      Patent Applications. The Assignor authorizes the Assignee to file patent applications in any or all countries for any or all of said inventions and discoveries in the name of the Assignee or otherwise as the Assignee may deem advisable, under International Convention or otherwise.

3.      Authorization for Commissioner. The Assignor authorizes and requests the Commissioner of Patents and Trademarks of the United States of America and the applicable officials of any other agencies or authorities, governmental or otherwise, to issue or transfer said Patent to the Assignee, as assignee of the entire right, title, and interest therein or otherwise as the Assignee may direct.

4.      Further Assurances. As and to the extent that any governmental or quasi-governmental office or agency pertaining to the filing, registration, application or

processing of intellectual property, including without limitation the United States Patent and Trademark Office or the offices in which the Patent listed is or was registered, applied for, pending or recorded, requests that additional forms or documents be presented or executed by the Assignor or its agents, affiliates or attorneys, the Assignor shall, at the Assignee's sole cost and expense, execute such documents and deliver them to the Assignee or its agents, attorneys or designees, as applicable.

5.     <u>Third Party Beneficiaries</u>.  Nothing in this Assignment, whether express or implied, is intended, nor shall any provision contained herein be construed, to confer any rights or remedies under or by reason of this Assignment on any persons other than the Assignee and its successors and assigns, nor is anything in this Assignment intended to relieve or discharge the obligation or liability of any third persons to the Assignor or the Assignee, nor shall any provision contained herein give any third party any right of subrogation or action over or against the Assignor or the Assignee.

6.     <u>Parties in Interest</u>.  The terms and provisions of this Assignment shall be binding upon, and inure to the benefit of, the Assignor and the Assignee and their respective successors and assigns.

7.     <u>Governing Law</u>.  Except to the extent that federal law preempts state law with respect to matters covered hereby, this Assignment shall be governed by the internal laws of the Commonwealth of Virginia as to all matters (without regard for Virginia's conflicts of law principles), including, but not limited to, matters of validity, construction, effect and performance.

8.     <u>Counterpart Signature Pages</u>.  This Assignment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Copies (facsimile or original) of signatures to this Assignment shall be deemed to be originals and shall be binding to the same extent as original signatures.

[Signature Page to Follow]

2

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be duly executed and delivered as of the Effective Date.

THE ASSIGNOR:

Jennifer Whitaker

*Jennifer L Whitaker* 1/18/11

THE ASSIGNEE:

Curtain Cuts, LLC,
a Virginia limited liability company

By: *Jennifer L Whitaker* 1/18/11
     Name: Jennifer Whitaker
     Title: [•]

**SCHEDULE 1**

Patent

| Country | Title | U.S. Patent No. | Registration Date | Owner |
|---|---|---|---|---|
| US | SHOWER CURTAIN WITH FLAP FOR USE WITH TUB TRANSFER BENCH | 7,761,935 | 27-Jul-2010 | Jennifer Whitaker |

# EXHIBIT 2

# PATENT LICENSE AGREEMENT

This Patent License Agreement (this "Agreement") is made this 31st day of January, 2011 (the "Effective Date") by and between On The Right Track Systems, Inc. a New York corporation, having its principal place of business at 174 Hudson Street, New York, NY 10013 (hereinafter referred to as "Licensee"), and Curtain Cuts LLC, a Virginia limited liability company having its principal place of business at 11452 Pinedale Drive, Glen Allen, VA 23059 (hereinafter referred to as "Licensor") (each being sometimes referred to herein as a "Party" and together being sometimes referred to collectively herein as the "Parties").

## RECITALS

WHEREAS, Licensor is the owner of U.S. Patent No. 7,761,935, entitled "Shower Curtain With Flap For Use With Tub Transfer Bench" in respect to which it is prepared to grant a license to Licensee;

WHEREAS, Licensee wishes to acquire a license (as set forth below) under the Patent for purposes of manufacturing and distributing Products to healthcare distributors, healthcare facilities, healthcare practitioners and direct to consumers.

NOW, THEREFORE, in consideration of the rights and obligations of the Parties set forth herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

1.   Definitions

As used herein, the following terms shall have the meanings set forth below:

1.1      Net Sales Price, for the purpose of computing royalties, means Licensee's invoice price, f.o.b. factory exclusive of freight and sales tax, after deduction of regular trade and quantity discounts, but before deduction of any other items, including but not limited to freight allowances, cash discounts, and agents' commissions. In order to assure to Licensor the full royalty payments contemplated in this Agreement, Licensee agrees that in the event any Products are sold for purposes of resale either (i) to a corporation, firm, individual or association that owns a controlling interest in Licensee by stock ownership or otherwise, or (ii) to a corporation, firm, or association in which Licensee or its stockholders own a controlling interest by stock ownership or otherwise, the royalties to be paid in respect to such Products will be computed on the net selling price at which the purchaser for resale sells such Products rather than upon the net selling price of the Licensee.

1.3      Patent means U.S. Patent No. 7,761,935 and all divisions, continuations-in-part, continuations, reissues, substitutes, reexaminations, and extensions thereof.

1.4      Product means any and all products that, if unlicensed, would infringe one or more claims of the Patent.

1

2.    License Grant

2.1    Licensor hereby grants to Licensee an exclusive, nonsublicensable right and license under the Patent to make, use, offer to sell, sell, and import  Products, globally and to incorporate into such Products Hookless® Technology

3.    License Fee and Royalty

3.2    Licensee must pay to Licensor a royalty of seven percent (7%) of the Net Sales Price of all Products sold or otherwise disposed of under the license granted under Section 2.1 of this Agreement.

3.3    Licensee must pay to Licensor, in addition to the royalty in Section 3.2, a commission of ten percent (10%) of the Net Sales Price for sales Licensor makes to businesses and fifteen percent (15%) of the Net Sales Price for sales Licensor makes to individuals.  The foregoing sales commission will not apply to sales made by Licensee, its employees and its independent sales agents

4.    Minimum Royalties

4.1    Licensee must pay to Licensor royalties as stated in Sections 3.2 and 3.3, but in no event will royalties for any calendar year during the term of the Patent be less than the following minimum royalties during each of the calendar years indicated:

| Calendar Year | Minimum Royalty, U.S. $ per Calendar Year* ** |
|---|---|
| 2011 | $8,020.81  (or 7% of $114,583.00) |
| 2012 | $18,750.00  (or 7% of $267,847.00) |
| 2013 | $21,250.00  (or 7% of $303,357.00) |
| 2014 | $23,750.00  (or 7% of $339,385.00) |
| 2015 | $26,250.00  (or 7% of $375,000.00) |
| 2016 | $27,500.00  (or 7% of $392,857.00) |

(and each calendar year thereafter during the term of this Agreement)

---

*Net to Licensee or after taxes, if any, withheld at the source.

---

**The 2011 calendar year of the term will run from February 1, 2011 through December 31, 2011.

4.2    The license granted in Section 2.1 will automatically become nonexclusive on the first day of the month of February of any year if, as of that date, Licensee has failed

2

to pay to Licensor the minimum annual royalty required pursuant to Section 4.1 for the immediately preceding calendar year.

4.3     Licensor may, by written notice to Licensee, terminate this Agreement during any February subsequent to the year 2016, if Licensee has not practiced the Patent during the calendar year that precedes each such February to the extent necessary to generate earned royalties as provided by Section 4.1 of this Agreement.

5.     Payments

5.1     Not later than the last day of each month following the previous month's invoicing by the Licensee of the Products, Licensee must furnish to Licensor a written statement in such detail as Licensor may reasonably require of all amounts due pursuant to Sections 3.2 and 3.3 for the monthly period ending the last day of the preceding month,, and must pay to Licensor all amounts due to Licensor.  In the event that the amounts due at the end of any calendar year do not equal or exceed the minimum royalties specified in Section 4.1 for said calendar year, Licensee must pay to Licensor, on or before the last day of the following January, the amount required to satisfy the minimum royalty obligation for the preceding calendar year in order to maintain its exclusive license. Such amounts are due at the dates the statements are due. If no amount is accrued during any monthly period, a written statement to that effect will be furnished.

5.2     Payments provided for in this Agreement, when overdue, will bear interest at a rate per annum equal to the lesser of the maximum permitted by law or five percent (5%) in excess of the "Prime Rate" published by "The Wall Street Journal" at the time such payment is due, and for the time period until payment is received by Licensor.

5.3     If this Agreement is for any reason terminated before all of the payments herein provided for have been made (including minimum royalties for the year in which the Agreement is terminated), Licensee must immediately submit a terminal report and pay to Licensor any remaining unpaid balance even though the due date as above provided has not been reached.

6.     Manufacture and Quality Standards

6.1     The Products shall meet or exceed high standards of style, appearance, image and quality (including, but not limited to, quality of material and workmanship) in order to protect and enhance the reputation of Licensor and the goodwill pertaining thereto.  All Products shall be consistent with, or superior in quality to, the samples or prototypes provided to and approved by Licensor.  Licensee shall manufacture, package, ship and label the Products in accordance with (i) all applicable foreign, federal, state and local laws, rules and regulations, (ii) all applicable industry standards and guidelines, (iii) the reasonable manufacturing and packaging specifications and requirements established from time to time by Licensor. Notwithstanding the foregoing, Licensee shall remain fully responsible for all design, quality, product liability and other aspects of the Products.

3

6.2     Licensee agrees to furnish Licensor promptly with the addresses of Licensee's production facilities for the Products and the names and addresses of the persons or entities, if any, which are manufacturing the Products for Licensee. Licensor, at its sole expense shall have the right upon reasonable notice to Licensee, during regular business hours, to inspect any production facility where the Products are being manufactured to determine whether Licensee is adhering to the requirements of this Agreement relating to the nature and quality of the Products.   It is Licensee's responsibility to ensure that all Products are manufactured in accordance with the terms hereof.

7.     Representations and Disclaimer of Warranties; Breach of Representations and Warranties

7.1     NOTHING IN THIS AGREEMENT WILL BE DEEMED TO BE A REPRESENTATION OR WARRANTY BY LICENSOR OF THE VALIDITY OF THE PATENT. LICENSOR WILL HAVE NO LIABILITY WHATSOEVER TO LICENSEE OR ANY OTHER PERSON FOR OR ON ACCOUNT OF ANY INJURY, LOSS, OR DAMAGE, OF ANY KIND OR NATURE SUSTAINED BY, OR ANY DAMAGE ASSESSED OR ASSERTED AGAINST, OR ANY OTHER LIABILITY INCURRED BY OR IMPOSED UPON LICENSEE OR ANY OTHER PERSON, ARISING OUT OF OR IN CONNECTION WITH OR RESULTING FROM (A) THE PRODUCTION, USE, OR SALE OF ANY APPARATUS OR PRODUCT, OR THE PRACTICE OF THE PATENT; OR (B) ANY ADVERTISING OR OTHER PROMOTIONAL ACTIVITIES WITH RESPECT TO ANY OF THE FOREGOING, AND LICENSEE WILL HOLD LICENSOR, AND ITS OFFICERS, AGENTS, OR EMPLOYEES, HARMLESS IN THE EVENT LICENSOR, OR ITS OFFICERS, AGENTS, OR EMPLOYEES, IS HELD LIABLE CONTRARY TO THE FOREGOING DISCLAIMER.

7.2     Licensee represents and warrants that: (i) it shall not, at any time, contest the validity of the Patent, or take any action that would impair the value of the Patent, or assist a third party in engaging in any of the foregoing; (ii) shall not sell, have sold, offer for sale, transfer or distribute the Product in any manner to any party in a bundled combination with another product without the prior written consent of Licensor; (iii) shall not transfer or distribute the Product for free or sell the Product at substantially less than the Net Sales Price (excluding sales made pursuant to periodic price reductions resulting from "specials," "sales" or volume pricing discounts, closeouts of discontinued styles or samples sent at no cost to prospective purchasers solely for promotional purposes) in exchange for non-monetary or "in-kind" consideration, or for the purpose of increasing the sale of, or publicizing, another product or service, without the prior written approval of Licensor.

4

8. Termination

8.1     This Agreement will expire upon the expiration of the Patent, unless the Agreement is sooner terminated.

8.2     Licensee may terminate this Agreement at any time upon sixty (60) days' written notice in advance to Licensor, subject to any payment obligations Licensee may have to Licensor pursuant to Section 5.3.

8.3     If either party is in default of any obligation hereunder, or is adjudged bankrupt, or becomes insolvent, or makes an assignment for the benefit of creditors, or is placed in the hands of a receiver or a trustee in bankruptcy, the other party may terminate this Agreement by giving sixty (60) days' notice by Registered Mail to the other party, specifying the basis for termination. If within sixty (60) days after the receipt of such notice, the party receiving notice remedies the condition forming the basis for termination, such notice will cease to be operative, and this Agreement will continue in full force.

8.4     Licensor may terminate this Agreement immediately if: (i) upon Licensee's breach of Section 8.2, Licensee fails to cure such breach and provide Licensor a full accounting of any and all monies accrued or accruable to Licensee that are attributed to transfers violating Section 7.2 within thirty (30) days of Licensee's receipt of a default notice from Licensor; (ii) upon the failure of Licensee to submit royalty statements or royalty payments to Licensor in accordance with Section 5.1 of this Agreement, Licensee fails to cure such breach within fifteen (15) days of Licensee's receipt of a default notice from Licensor.

8.5     The word "termination" and cognate words, such as "term" and "terminate," used in this Section 9 and elsewhere in this Agreement are to be read, except where the contrary is specifically indicated, as omitting from their effect the following rights and obligations, all of which will survive any termination to the degree necessary to permit their complete fulfillment or discharge:

a.      Licensee's obligation to supply a terminal report as specified in Section 6.3 of this Agreement.

b.      Licensor's right to receive or recover and Licensee's obligation to pay any and all royalties accrued or accruable for payment at the time of any termination.

c.      Licensee's obligation to maintain records under Section 10.1 of this Agreement.

d.      Any cause of action or claim of Licensor accrued, or to accrue, because of any breach or default by Licensee.

e.      The representation and disclaimer of warranties of Section 7.

8.6     Following the expiration or termination of this Agreement, Licensee shall: (i) cease developing new Products and advertising and promotional materials for the Products, (ii) have six (6) months to exhaust its existing stock of Products and advertising and promotional materials for the Products.

9.     Litigation

9.1     Each party will notify the other party in writing of any suspected infringement(s) of the Patent and will provide to the other party any evidence of such infringement(s).

9.2     Licensee has the first right to institute suit for infringement(s) so long as this Agreement remains exclusive. Licensor agrees to join as a party plaintiff in any such lawsuit initiated by Licensee, if requested by Licensee, with all costs, attorneys' fees, and expenses to be paid by Licensee. However, if Licensee does not institute suit for infringement(s) within ninety (90) days after receipt of written notice from Licensor of Licensor's desire to bring suit for infringement in its own name and on its own behalf, then Licensor may, at its own expense, bring suit or take any other appropriate action.

9.3     If this Agreement is nonexclusive at the time of infringement(s), Licensor will have the sole right to institute suit for infringement and to recover damages.

9.4     Licensee will be entitled to any recovery of damages resulting from a lawsuit brought by it pursuant to Section 9.2. Licensor will be entitled to recovery of damages resulting from any lawsuit brought by Licensor to enforce the Patent, pursuant to Section 9.2.

9.5     Neither party may settle with an infringer without the prior approval of the other party if such settlement would affect the rights of the other party under the Patent.

10.     Records

10.1     Licensee must keep accurate records of all operations affecting payments hereunder, and must permit Licensor or its duly authorized agent to inspect all such records and to make copies of or extracts from such records during regular business hours throughout the term of this Agreement and for a reasonable period of not less than three (3) years thereafter.

11.     Nonassignability/Nondelegation

11.1.Neither party may assign this Agreement, in whole or in part, without the prior written consent of the other party; provided, however, either party may assign this Agreement to an entity succeeding, whether by sale, merger, or other corporate reorganization, to substantially all of its assets and business activity for which this Agreement has been entered into upon written notice to the other party and assumption by such successor entity of the assigning party's obligations hereunder.  Any attempted assignment in contravention of the foregoing shall be void and of no force or effect. This

6

Agreement is binding upon and inures to the benefit of the parties hereto and their permitted successors and assigns.

12.    Severability

12.1    The parties agree that if any part, term, or provision of this Agreement is found illegal or in conflict with any valid controlling law, the validity of the remaining provisions will not be affected thereby.

12.2    In the event the legality of any provision of this Agreement is brought into question because of a decision by a court of competent jurisdiction, Licensor, by written notice to Licensee, may revise the provision in question or may delete it entirely so as to comply with the decision of said court.

13.    Nonuse of Licensor's Name

13.1    In publicizing anything made, used, offered for sale, sold, or imported under this Agreement, Licensee may not use the name of Licensor or otherwise refer to any organization related to Licensor, except with the written approval of Licensor.

14.    Waiver, Integration, Alteration

14.1    The waiver of a breach hereunder may be effected only by a writing signed by the waiving party and will not constitute a waiver of any other breach.

14.2    This Agreement represents the entire understanding between the parties, and supersedes all other agreements, express or implied, between the parties concerning the Patent.  In entering into this Agreement, no party has relied upon another person's statement, representation, warranty, or agreement except for those expressly contained herein.  The only conditions precedent to this Agreement's effectiveness are those expressly stated herein.

14.3    A provision of this Agreement may be altered only by a writing signed by both parties, except as provided in Sections 12.1 and 12.2, above.

15.    Marking

15.1    Licensee must place in a conspicuous location on Products a patent notice in accordance with 35 U.S.C. §287.

16.    Applicable Law

16.1    This Agreement will be construed in accordance with the substantive laws of the State of New York without regard to its principles of conflicts of law.

17.  Notices Under the Agreement

7

17.1    For the purpose of all written communications and notices between the parties, their addresses are:

**Licensor:**    Curtain Cuts LLC
11452 Pinedale Drive
Glen Allen, VA 23059
ATTN: Jennifer Whitaker

With copy to: Douglas Smith
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia 23219

**Licensee:**    On The Right Track Systems, Inc.
174  Hudson Street
New York, NY 10013
Attn: Keil Merrick

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their duly authorized officers effective as of the Effective Date.

LICENSEE
On The Right Track Systems, Inc.

ATTEST:
By: _____    By: _____
                       Title: _Partner_
Signed at: _174 Hudson St._    Date: _1/31/11_

LICENSOR
Curtain Cuts, LLC

ATTEST:
By: _____    By: _Jennifer L. Whitaker_
                       Title: _Owner_
Signed at: _901 East Cary St._    Date: _2/4/11_

8