UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -
JENNIFER L. WHITAKER,

                        Plaintiff,                  21 Civ. 840-PKC

    -against-

ON THE RIGHT TRACK SYSTEMS, INC.,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - -

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS

                                        PETER M. LEVINE
                                        **Attorney for Defendant**
                                        444 Madison Avenue, Suite 410
                                        New York, New York 10022
                                        (212) 599-0009

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   Jennifer Whitaker Has No Claim as an Assignee of Curtain Cuts . . . . . . . . . . . . . 1

    A.   The Patent License Agreement Prohibits the
        Assignment of Discrete Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   On The Right Track Did Not Waive the
        Anti-Assignment Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   Jennifer Whitaker's E-Mail of July 10, 2012
        Did Not Effect an Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  Jennifer Whitaker Has No Claim as a Third-Party Beneficiary . . . . . . . . . . . . . . . 5

    A.   The Anti-Assignment and Inurement Clauses
        Preclude Such a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   Being a Shareholder of Curtain Cuts Does Not
        Make Jennifer Whitaker a Third-Party Beneficiary . . . . . . . . . . . . . . . . . . . . 7

    C.   The Agreement Does Not Express an Intent to
        Benefit a Third Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. The Quasi-Contract Claims are Precluded by the Patent License Agreement . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

*Aetna Nat. Bank v. Fourth Nat. Bank*,
   46 N.Y. 82 (1871) ........................................................................................................... 4

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
   637 F.Supp.2d 185 (S.D.N.Y. 2009) ............................................................................ 9, 11

*Allenby, LLC v. Credit Suisse, AG*,
   134 A.D.3d 577 (1st Dep't 2015) ................................................................................... 11

*Allhusen v. Caristo Const. Corp.*,
   303 N.Y. 446 (1952) ........................................................................................................ 2

*Amusement Indus., Inc. v. Stern*,
   2010 WL 2976199 (S.D.N.Y. July 26, 2010) .................................................................. 7

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*,
   692 F.3d 42 (2d Cir. 2012) .............................................................................................. 8

*Beal Sav. Bank v. Sommer*,
   8 N.Y.3d 318 (2007) ........................................................................................................ 2

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   70 N.Y.2d 382 (1987) .................................................................................................... 10

*Consol. Edison, Inc. v. Ne. Utilities*,
   426 F.3d 524 (2d Cir. 2005) ............................................................................................ 8

*Desarrolladora Farallon S. De R.L. De C.V. v. Cargill, Inc.*,
   2015 WL 7871040 (S.D.N.Y. Dec. 3, 2015) ................................................................. 11

*E. Coast Athletic Club, Inc. v. Chicago Title Ins. Co.*,
   39 A.D.3d 461 (2d Dep't 2007) ....................................................................................... 8

*EBC I, Inc. v. Goldman, Sachs & Co.*,
   5 N.Y.3d 11 (2005) ........................................................................................................ 10

*Encore Lake Grove Homeowners Assn., Inc. v. Cashin Assoc., P.C.*,
   111 A.D.3d 881 (2d Dep't 2013) ..................................................................................... 9

*Feigen v. Advance Capital Mgt. Corp.*,
   150 A.D.2d 281 (1st Dep't 1989) ................................................................................... 11

*Flickinger v. Harold C. Brown & Co.*,
   947 F.2d 595 (2d Cir.1991) ............................................................................................. 9

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
   66 N.Y.2d 38 (1985) ........................................................................................................ 7

*In re Fyre Festival Litig.*,
   399 F.Supp.3d 203 (S.D.N.Y. 2019)...................................................................................10

*Gregory v. ProNAi Therapeutics Inc.*,
   297 F.Supp.3d 372 (S.D.N.Y. 2018).....................................................................................2

*IMS Engineers-Architects, P.C. v. State*,
   51 A.D.3d 1355 (3d Dep't 2008).........................................................................................10

*J.T. Magen & Co., Inc. v. Nissan N. Am., Inc.*,
   178 A.D.3d 466 (1st Dep't 2019).........................................................................................10

*LaSalle Natl. Bank v. Ernst & Young*,
   285 A.D.2d 101 (1st Dep't 2001)...........................................................................................8

*Lee v. Kylin Mgt. LLC*,
   2019 WL 917097 (S.D.N.Y., Feb. 25, 2019).......................................................................12

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
   157 F.3d 956 (2d Cir. 1998) ...............................................................................................10

*Matana v. Merkin*,
   989 F.Supp.2d 313 (S.D.N.Y. 2013).....................................................................................7

*Melcher v. Apollo Med. Fund Mgmt. L.L.C.*,
   105 A.D.3d 15 (1st Dep't 2013)..........................................................................................10

*Metro. Elec. Mfg. Co. v. Herbert Const. Co.*,
   183 A.D.2d 758 (2d Dep't 1992).........................................................................................10

*Montesa v. Schwartz*,
   836 F.3d 176 (2d Cir. 2016) .................................................................................................1

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
   225 F.Supp.3d 201 (S.D.N.Y. 2016)...................................................................................11

*Natura Dev. N.V. v. HEH Advisors LLC*,
   2020 WL 550661 (S.D.N.Y. Feb. 4, 2020) (Castel, J.) ......................................................10

*Oost-Lievense v. N. Am. Consortium, P.C.*,
   969 F.Supp. 874 (S.D.N.Y. 1997).........................................................................................9

*In re Optimal U.S. Litig.*,
   813 F.Supp.2d 351 (S.D.N.Y. 2011).....................................................................................7

*Orlando v. Nxt-ID Inc.*,
   2021 WL 1143766 (S.D.N.Y. Mar. 23, 2021) ....................................................................11

*Paragon Leasing, Inc. v. Mezei*,
   8 A.D.3d 54 (1st Dep't 2004)..............................................................................................11

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
   19 F.Supp.2d 157 (S.D.N.Y. 1998) ............................................................................................ 6

*Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*,
   863 F.Supp. 135 (S.D.N.Y. 1994) .............................................................................................. 5

*S'holder Rep. Servs. LLC v. Scribble Techs. Inc.*,
   2018 WL 2356659 (S.D.N.Y. March 30, 2018) ....................................................................... 2

*Sazerac Co. v. Falk*,
   861 F.Supp. 253 (S.D.N.Y. 1994) .............................................................................................. 6

*Schreiber v. Keller Mech. Engraving Co.*,
   57 Misc. 644, 108 N.Y.S. 658 (App. Term 1st Dep't 1908) ..................................................... 4

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
   754 F.Supp. 37 (S.D.N.Y.1991) ............................................................................................... 11

*Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch. Dist.*,
   63 A.D.3d 1556 (4th Dep't 2009) ............................................................................................ 10

*Sillman v. Twentieth Century-Fox Film Corp.*,
   3 N.Y.2d 395 (1957) .................................................................................................................. 3

*Solutia Inc. v. FMC Corp.*,
   385 F.Supp.2d 324 (S.D.N.Y. 2005) ......................................................................................... 7

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
   988 F.Supp. 367 (S.D.N.Y. 1997) ............................................................................................. 7

*V.S. v. Muhammad*,
   595 F.3d 426 (2d Cir. 2010) .................................................................................................... 11

*Veleron Holding, B.V. v. BNP Paribas SA*,
   2014 WL 12699263 (S.D.N.Y. Apr. 16, 2014) ......................................................................... 6

*Waxman v. Cliffs Nat. Res. Inc.*,
   222 F.Supp.3d 281 (S.D.N.Y. 2016) ......................................................................................... 9

PRELIMINARY STATEMENT

Had Jennifer Whitaker wanted the benefits of the Patent License Agreement, all she had to do was become a party to the Agreement. As the inventor, she could licensed the '935 Patent directly to On The Right Track. Instead, she chose to assign the Patent to Curtain Cuts and have Curtain Cuts license the Patent. Had Jennifer Whitaker wanted the Agreement to continue, she could have either maintained Curtain Cuts as an on-going entity or obtained consent to assign the Agreement to a permitted assignee. She did neither and now strains to concoct a relationship between her and On The Right Track.

She claims to be the successor to Curtain Cuts "as a matter of law" [Pl. Mem. 10] but cites no authority – not a case, not a statute – to explain how this could have happened. She claims to be an assignee but does not identify any writing effecting the assignment; nor does she explain how an unwritten assignment may comply with the Statute of Frauds. She claims to be a third-party beneficiary but points to not one word in the Patent License Agreement even hinting she may enforce the Agreement.

She acknowledges never having performed any services for On The Right Track but asserts she "would have performed those services" if asked. *Pl. Mem. 21*. In other words, she is seeking recompense for the reasonable value of nothing.

ARGUMENT

I. Jennifer Whitaker Has No Claim as an Assignee of Curtain Cuts

    A. The Patent License Agreement Prohibits the Assignment of Discrete Claims

In her Complaint [at ¶ 30], Jennifer Whitaker alleged she was "the assignee of … the Agreement." The Complaint nowhere mentioned the assignment of a discrete claim. In her memorandum of law [at p. 12], she posits herself as "an assignee of the Agreement itself, or as an assignee of claims against OTRTS arising pursuant to the License Agreement." The latter appellation must be rejected as an improper attempt to amend a pleading by adding new factual allegations in a memorandum of law. *Montesa v. Schwartz*, 836 F.3d 176, 191 (2d Cir.

2016); *Gregory v. ProNAi Therapeutics Inc.*, 297 F.Supp.3d 372, 402 n. 14 (S.D.N.Y.), *aff'd*, 757 F. App'x 35 (2d Cir. 2018).

Even if the Complaint can be read to include an alleged partial assignment, this alternative theory does Jennifer Whitaker no good. The unambiguous terms of the anti-assignment clause [§ 11.1] prohibit a partial assignment: "Neither party may assign this Agreement, *in whole or in part*, without the prior written consent of the other party … Any attempted assignment in contravention of the foregoing shall be void and of no force or effect."

The phrase "in whole or in part" distinguishes the anti-assignment clause of the Patent License Agreement from the clause at issue in *S'holder Rep. Servs. LLC v. Scribble Techs. Inc.*, 2018 WL 2356659 (S.D.N.Y. March 30, 2018), the sole case Jennifer Whitaker cites on this point. In *Scribble*, the plaintiff obtained assignments of claims arising from a stock purchase agreement, which provided: "This Agreement shall not be assignable by any Party without the prior written consent of all of the other Parties and any attempt to assign this Agreement without such consent shall be void and of no effect." The court ruled that the clause prohibited the assignment of the agreement as a whole but allowed the assignment of discrete claims arising from the agreement. The *Scribble* court cited the clause at issue in *Allhusen v. Caristo Const. Corp.*, 303 N.Y. 446 (1952) as an example of a prohibition against both full and partial assignments: "The assignment by the second party of this contract or any interest therein, or of any money due or to become due by reason of the terms hereof without the written consent of the first party shall be void." *Id.* at 449.

Similar to the clause in *Allhusen* and significantly different from the clause in *Scribble*, section 11.1 of the Patent License Agreement prohibits the assignment of discrete claims. Jennifer Whitaker's attempt to expunge the phrase "in whole or in part" from section 11.1 must be rejected. *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) ("A reading of the contract should not render any portion meaningless").

B.  On The Right Track Did Not Waive the Anti-Assignment Clause

Jennifer Whitaker acknowledges that the Patent License Agreement was never modified. *Pl Mem. 9*. Yet, in another display of inconsistency, she contends the Agreement was modified by a supposed waiver of the anti-assignment clause. *Id.* at 12. She cites *Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395 (1957) for the proposition that a "prohibition against assignment may be waived," but a close examination of that case reveals its scope to be much more narrow.

In *Sillman*, the plaintiffs provided financing for the production of a motion picture, receiving in return from the producer assignments of receipts generated by the picture. The distributor refused to pay the plaintiffs their share of the receipts, citing the anti-assignment clause in the distribution agreement, which provided that the distributor was not required to pay anyone except the producer and was not required to recognize any assignments. The Court of Appeals first held the anti-assignment clause allowed a waiver: "The very wording of the clause that Twentieth Century 'shall not be required to' recognize assignments made without consent and 'shall have the right to withhold' payments indicates that the parties contemplated that Twentieth Century might recognize such assignments and thereby waive the anti-assignment clause." 3 N.Y.2d at 403. The Court next held a triable issue had been presented on whether the clause had actually been waived: the distributor had reviewed the contracts between the plaintiffs and the producer before agreeing to distribute the motion picture, and consequently knew of the assignments; having learned of the assignments, the distributor was required by the distribution agreement to notify the producer if the assignments would be recognized, but the distributor failed to notify the producer. *Id.*

In *Sillman*, the distribution agreement gave the distributor the option to accept or reject assignments, and the assignments at issue fell within the terms of the distribution agreement. Here, the Patent License Agreement provides no such option and explicitly

declares that any "attempted assignment" made "in contravention" of its terms "shall be void and of no force or effect." Any unauthorized assignment being an immediate nullity, no action by the non-assigning party is required. Jennifer Whitaker never presented On The Right Track with a written assignment and never requested consent to an assignment. The purported assignment, as she describes it, does not fall within the terms of the Patent License Agreement, which permits assignment only to a corporate "entity," not a natural person. On The Right Track had nothing to waive, because an assignment never existed.

      C.      Jennifer Whitaker's E-Mail of July 10, 2012 Did Not Effect an Assignment

Jennifer Whitaker implies that her one-sentence e-mail inquiry to On The Right Track ["Is it possible to write the check to me instead of Curtain Cuts?"] effected an assignment. *Pl. Mem. 12*. This is another improper attempt to amend the Complaint. The e-mail request is nowhere pleaded. Rather, it has been presented by On The Right Track to refute the false allegation that royalties had always been paid directly to Jennifer Whitaker and never to Curtain Cuts.[1]

A mere request "revocable by [her] at will," the e-mail cannot possibly constitute an assignment. *See Schreiber v. Keller Mech. Engraving Co.*, 57 Misc. 644, 646, 108 N.Y.S. 658, 659 (App. Term 1st Dep't 1908) (employee's direction to employer to pay a portion of salary to third party does not constitute an assignment to third party). The e-mail made no reference to any transfer of rights; nor did the e-mail refer to Minimum Royalties, or to any specific amount owed under the Patent License Agreement, or to any future payments. Neither the amount of "the check" nor the nature of the obligation the check would satisfy was specified. No consideration was offered or accepted for following a new procedure. *See Aetna Nat. Bank v. Fourth Nat. Bank*, 46 N.Y. 82, 92-93 (1871) ("an agreement upon no new

---

[1] Jennifer Whitaker's position on the role of this document is unclear. On page 8 of her memorandum she contends, the "attempt to dispute and contest some of the facts alleged … should be rejected," but on page 11 cites the e-mail as indicating she "succeeded to Curtain Cuts' right to receive royalty payments."

consideration, between debtor and creditor, that the former should pay the amount of his debt to a third person … does not create a trust or interest in such third person").

Jennifer Whitaker's sole case on this point, *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, 863 F.Supp. 135 (S.D.N.Y. 1994), is distinguishable. There, the insured, prior to her death, was treated at the plaintiff hospital. The insured's son signed an affidavit directing all insurance payments be made to the hospital. Contending the son had validly assigned the insurance proceeds, the hospital demanded payment directly from the insurance carrier. The carrier balked, contending the Certificate of Insurance, which permitted payment only to the insured, combined with the absence of a procedure for the carrier to consent to an assignment, rendered the assignment void. The court first ruled that the Certificate lacked "the clear language required to make the assignment void." *Id.* at 137. The court next ruled that the son's direction to the carrier to pay the hospital the specific sum owed to him under the policy, combined with the delivery of the affidavit to the hospital, constituted a permitted assignment. *Id.* at 138.

In *Trussel*, the carrier had to strain to find a prohibition of assignments in the Certificate of Insurance. No such effort is required to find a prohibition in the Patent License Agreement. In *Trussel*, the son's affidavit contained an explicit direction to pay a specific sum. Jennifer Whitaker's e-mail conveyed no such message.

II.   Jennifer Whitaker Has No Claim as a Third-Party Beneficiary

   A.   The Anti-Assignment and Inurement Clauses Preclude Such a Claim

Jennifer Whitaker heralds the absence of a "no third-party beneficiary" clause as proof of the parties' intention to allow her to enforce the Patent License Agreement. *Pl. Mem. 15*. She has overlooked the "inurement" clause" in paragraph 11.1: "This Agreement is binding upon and inures to the benefit of the parties hereto and their permitted successors and assigns." This clause, in combination with the anti-assignment clause, precludes enforcement

-5-

of the Agreement by a self-proclaimed third-party beneficiary. *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 163-64 (S.D.N.Y. 1998); *Sazerac Co. v. Falk*, 861 F.Supp. 253, 258 (S.D.N.Y. 1994).

In *Piccoli*, the contract provided: "[E]xcept as provided below, neither this Agreement nor the license or other rights granted hereunder may be sublicensed, assigned or transferred by [Jeanswear] except with [CKI's] prior written consent…. Except as otherwise provided herein, this Agreement shall inure to the benefit of and shall be binding upon the parties and permitted successors and assigns."

In *Sazerac* the contract provided: "Neither this Agreement nor any right, remedy, obligation or liability arising hereunder or by reason hereof shall be assignable by any party to this Agreement without the prior written consent of the other parties. … This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns."

In both *Piccoli* and *Sazerac*, the court construed these provisions as limiting the contractual benefits solely to the contracting parties. As the court explained in *Piccoli*:

> An inurement clause, when taken together with a prohibition of assignments, on the other hand, does suggest that the parties did not intend that third parties benefit from the contract. Language specifying that the benefit of a contract is to inure to the contract's signatories arguably is superfluous unless it serves to limit the category of beneficiaries. This is the wisdom behind the maxim expressio unus est exclusio alterus.

19 F.Supp.2d at 164. *Accord Veleron Holding, B.V. v. BNP Paribas SA*, 2014 WL 12699263, at *21 (S.D.N.Y. Apr. 16, 2014).

The prohibition on assignments and the specification that the Patent License Agreement inures to the benefit of only the contracting parties and "their permitted successors and assigns" make plain the intention to preclude third-party enforcement.

### B. Being a Shareholder of Curtain Cuts Does Not Make Jennifer Whitaker a Third-Party Beneficiary

Jennifer Whitaker contends her ownership of Curtain Cuts qualifies her as a third-party beneficiary. *Pl. Mem. 15*. She is wrong. Shareholders of a corporation are not third-party beneficiaries of contracts made by the corporation. *Matana v. Merkin*, 989 F.Supp.2d 313, 319 (S.D.N.Y. 2013). Her role as principal of Curtain Cuts entitled her "only to the indirect benefits stemming from [her] ownership of a business, and this is insufficient to demonstrate third-party beneficiary status." *Amusement Indus., Inc. v. Stern*, 2010 WL 2976199, at *8 (S.D.N.Y. July 26, 2010), *Rpt. & Rec'n Adopted*, 786 F.Supp.2d 758 (S.D.N.Y. 2011). *See Solutia Inc. v. FMC Corp.*, 385 F.Supp.2d 324, 338 (S.D.N.Y. 2005) (benefit received through corporate ownership insufficient to establish rights as third-party beneficiary).

Jennifer Whitaker deliberately chose the benefit of limited liability by dealing with On The Right Track through Curtain Cuts. She cannot now blithely claim the benefit of the Patent License Agreement in her personal capacity. *In re Optimal U.S. Litig.*, 813 F.Supp.2d 351, 380 n. 208 (S.D.N.Y. 2011) ("The idea of shareholders having directly enforceable rights as third party beneficiaries to corporate contracts is, I think, one that should be resisted. One of the consequences of limited liability that shareholders enjoy is that the law treats corporations as legal persons not simply agents for shareholders").

### C. The Agreement Does Not Express an Intent to Benefit a Third Party

A third party is an intended beneficiary when "no one other than the third party can recover if the promisor breaches the contract." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985). Conversely, if another besides the third party may recover, beneficiary status is negated. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F.Supp. 367, 373 (S.D.N.Y. 1997). Jennifer Whitaker contends she was an intended beneficiary of the Patent License Agreement "as the owner of the Patent, and the direct recipient of royalty payments." *Pl. Mem. 15*. She has gotten her facts wrong on both counts.

When the Patent License Agreement was signed, Curtain Cuts, not Jennifer Whitaker, owned the '935 Patent, as recited on first page of the Agreement: "Licensor is the owner of U.S. Patent No. 7,761,935." As the "Licensor," Curtain Cuts, granted to On The Right Track the right to exploit the '935 Patent. In return, On The Right Track was to pay royalties to the "Licensor," i.e., Curtain Cuts, and only to Curtain Cuts; no other recipient of royalties was stated. On The Right Track was to perform all of its other obligations under the Agreement to Curtain Cuts, and only to Curtain Cuts. Jennifer Whitaker had no rights under the Agreement; no performance of any aspect of the Agreement was owed to her. In the event of a breach by On The Right Track, only Curtain Cuts could seek redress.

Jennifer Whitaker's observation that "the identity of a third-party beneficiary need not be set forth in the contract" [Pl. Mem. 14] is an incomplete statement of the law. A nonparty can assert a claim for breach of contract "only if it is an intended, and not a mere incidental, beneficiary, and even then, even if not mentioned as a party to the contract, the parties' intent to benefit the third party must be apparent from the face of the contract." *E. Coast Athletic Club, Inc. v. Chicago Title Ins. Co.*, 39 A.D.3d 461, 463 (2d Dep't 2007); *LaSalle Natl. Bank v. Ernst & Young*, 285 A.D.2d 101, 108 (1st Dep't 2001). To create a third party right, "the language of the contract must clearly evidence an intent to permit enforcement by the third party." *Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 528 (2d Cir. 2005).

In each case cited by Jennifer Whitaker on this point, there was an explicit reference to a specific person or a class of persons to whom performance of the contract would be directly rendered: *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 55 (2d Cir. 2012) (plaintiff noteholders state claim as third-party beneficiaries of portfolio management agreement that "expressly requires the Portfolio Manager to perform various obligations—including managing the Reference Portfolio—on behalf of the Noteholders"); *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595 (2d Cir.1991) (plaintiff

deemed a third-party beneficiary of contract between broker and clearinghouse, under which clearinghouse was to register securities in plaintiff's name and deliver directly to plaintiff the securities he had purchased through the broker); *Oost-Lievense v. N. Am. Consortium, P.C.*, 969 F.Supp. 874, 879 (S.D.N.Y. 1997) ("plaintiff is specifically mentioned in the SPA on four separate occasions. Such specific reference to plaintiff supports the conclusion that he is an intended beneficiary under the contract"); *Encore Lake Grove Homeowners Assn., Inc. v. Cashin Assoc., P.C.*, 111 A.D.3d 881 (2d Dep't 2013) (condominium associations were third-party beneficiaries of Village resolution authorizing defendant engineer "to perform general building inspections as required by the building department for the Encore Lake Grove Community," which comprised the condominium associations).

This Court should decline to find words nowhere written to discern an intent nowhere expressed.

III.   The Quasi-Contract Claims are Precluded by the Patent License Agreement

Jennifer Whitaker's observation that the Federal Rules permit the pleading of alternative claims sounding in contract and quasi-contract [Pl. Mem. 16] is correct as far as it goes, but such alternative pleading is allowed "only if there is a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue." *Waxman v. Cliffs Nat. Res. Inc.*, 222 F.Supp.3d 281, 296 (S.D.N.Y. 2016). Here, the existence of the Patent License Agreement and its application to the dispute are not questioned, and Jennifer Whitaker's failure to allege that the Agreement is invalid or unenforceable precludes her from asserting quasi-contractual claims arising from the same subject matter. *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F.Supp.2d 185, 196 (S.D.N.Y. 2009).

The New York Court of Appeals has instructed that, when determining whether a written contract precludes quasi-contract claims, the focus of the inquiry is not on the parties to the contract but the subject of the contract: "The existence of a valid contract

governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter." *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 23 (2005); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987).

The Court of Appeals in *Clark-Fitzpatrick* did not draw a distinction between those who were parties to the contract and those who were not, and the distinction has been repeatedly rejected by the Appellate Division. *Melcher v. Apollo Med. Fund Mgmt. L.L.C.*, 105 A.D.3d 15, 27-28 (1st Dep't 2013). Following *Clark-Fitzpatrick*, the Appellate Division has consistently held that quasi-contract claims are precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract. *See, e.g., J.T. Magen & Co., Inc. v. Nissan N. Am., Inc.*, 178 A.D.3d 466, 467 (1st Dep't 2019); *Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch. Dist.*, 63 A.D.3d 1556, 1557 (4th Dep't 2009); *IMS Engineers-Architects, P.C. v. State*, 51 A.D.3d 1355, 1358 (3d Dep't 2008); *Metro. Elec. Mfg. Co. v. Herbert Const. Co.*, 183 A.D.2d 758, 759 (2d Dep't 1992).

This principle has been followed by the Second Circuit. *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998) (written agreement between purchaser and seller of equipment precludes seller's claim of unjust enrichment against third-party lender who foreclosed on its security interest and sold the equipment without paying seller).

This principle has been followed by this Court. *In re Fyre Festival Litig.*, 399 F.Supp.3d 203, 222 (S.D.N.Y. 2019) (Castel, J.) (plaintiffs who purchased concert tickets from corporate sponsor could not pursue claim of unjust enrichment against non-signatory corporate officers, because "there is an express contract that clearly controls for those fees"); *Natura Dev. N.V. v. HEH Advisors LLC*, 2020 WL 550661 (S.D.N.Y. Feb. 4, 2020) (Castel, J.) (written agreement precludes unjust enrichment claim against both corporate signatory and non-signatory corporate officer).

This principle has been "consistently" followed by other courts in the Southern

District. *See, e.g., Orlando v. Nxt-ID Inc.*, 2021 WL 1143766, at *7 (S.D.N.Y. Mar. 23, 2021); *Desarrolladora Farallon S. De R.L. De C.V. v. Cargill, Inc.*, 2015 WL 7871040, at *6 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 666 F. App'x 17 (2d Cir. 2016).

Jennifer Whitaker argues that quasi-contract claims are barred only when both parties to the lawsuit are also parties to the contract. She relies on *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F.Supp. 37 (S.D.N.Y.1991), which held that "existence of a written contract governing the same subject matter does not preclude [quasi-contract] recovery from non-parties." *Id.* at 40. The principle stated in *Sieden* has been consistently rejected. *See, e.g., Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F.Supp.3d 201, 207 (S.D.N.Y. 2016) ("Seiden and its reasoning have been consistently rejected by New York state courts and courts in this district such that it is no longer considered good law"); *Air Atlanta*, 637 F.Supp.2d at 196 (the rule announced in *Seiden* "has decidedly fallen out of favor in New York courts").

When applying state law, a federal court must "apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). To justify the departure from New York law, the *Seiden* court questioned the validity of *Feigen v. Advance Capital Mgt. Corp.*, 150 A.D.2d 281 (1st Dep't), *app. dism'd*, 74 N.Y.2d 874 (1989), the first Appellate Division case to hold after *Clark- Fitzpatrick* that a non-signatory to a contract cannot be held liable for unjust enrichment when an express contract covers the same subject matter. The criticism leveled by the *Seiden* court is not persuasive evidence that the New York Court of Appeals would abrogate the rule stated in *Feigen*. *Feigen* has been followed by the Appellate Division for years since *Seiden* was decided. *See, e.g., Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577, 579 (1st Dep't 2015); *Paragon Leasing, Inc. v. Mezei*, 8 A.D.3d 54, 54–55 (1st Dep't 2004). If the Appellate Division has been so consistently and blatantly misapplying the law since *Clark-Fitzpatrick* was decided in 1987,

then Court of Appeals would have long ago corrected the misapprehension. Apparently unpersuaded with the reasoning displayed in *Seiden,* the Court of Appeals has allowed decades of Appellate Division authority to stand. *Seiden*, clearly contrary to New York law, should not be followed; nor, for the same reason, should *Lee v. Kylin Mgt. LLC*, 2019 WL 917097 (S.D.N.Y., Feb. 25, 2019), which sought to rehabilitate *Seiden*.

## CONCLUSION

For the reasons stated in the moving memorandum of law and in this reply memorandum, the Complaint should be dismissed.

Dated: New York, New York
      May 26, 2021

                                    PETER M. LEVINE (PML-7630)
                                    Attorney for Defendant
                                    444 Madison Avenue, Suite 410
                                    New York, New York 10022
                                    212-599-0009