UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JENNIFER L. WHITAKER

                    Plaintiff,                  21-cv-840 (PKC)

      -against-

                                            <u>OPINION AND ORDER</u>

ON THE RIGHT TRACK SYSTEMS, INC.,

                    Defendant.

-------------------------------------------------------------x

CASTEL, U.S.D.J.

        This dispute relates principally to a patent licensing agreement for a shower curtain design between Curtain Cuts LLC ("Curtain Cuts")—a now-defunct entity which was wholly owned by plaintiff Jennifer L. Whitaker—and defendant On the Right Track Systems, Inc. ("OTRTS").  Alleging that OTRTS has failed to pay minimum royalties required under the agreement for the past several years, Whitaker brings claims against OTRTS for breach of contract, unjust enrichment and quantum meruit.  In so doing, Whitaker alleges that she is the "successor and/or assignee" of Curtain Cuts "and/or an intended third-party beneficiary" of the agreement.  (Compl. ¶¶ 16, 30.)  OTRTS now moves to dismiss the case for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P.

        For reasons to be explained, the Court will GRANT the motion.

BACKGROUND

        The Court summarizes the Complaint's factual allegations, and, for the purposes of the motion, accepts them as true, drawing all reasonable factual inferences in favor of the plaintiff as the non-movant.  <u>See</u> <u>In re Hain Celestial Grp., Inc. Sec. Litig.</u>, 20 F.4th 131, 133 (2d Cir. 2021).

On July 27, 2010, plaintiff Whitaker obtained a patent as the inventor of a shower curtain with an integral flap for accommodating a tub transfer bench from the United States Patent Office, U.S. Patent No. 7,761,935 ("'935 Patent").  (Compl. ¶ 5.)  A tub transfer bench is used by individuals who need to sit when showering.  Because the bench necessarily protrudes beyond the edge of the tub, water may splash to the floor.  Whitaker's invention entailed the use of two vertical slits in the shower curtain to create a flap, which "located along the bottom edge of the shower curtain, can be pulled into the slot of a tub transfer bench to prevent water from splashing outwards of the bathtub."  (Doc 17 (Benis Decl.) ¶ 5.)

On October 24, 2010, Whitaker sent an e-mail to defendant OTRTS—a company in the business of manufacturing, distributing, and selling patented cubicle curtain track systems and cubicle curtains for the healthcare industry—to find a source for purchasing fabric and for manufacturing her patented shower curtain.  (Compl. ¶¶ 6-7.)  On October 25, 2010, Keil Merrick of OTRTS responded to Whitaker's e-mail, informing her that OTRTS would be happy to explore a partnership with her.  (Id. ¶ 8.)  On November 5, 2010, Merrick e-mailed Whitaker a document he called a "Draft Agreement," which outlined the terms of the financial relationship between OTRTS and Whitaker.  (Id. ¶ 9.)

Days later, Whitaker formed Curtain Cuts, a Virginia limited liability company, and was its sole member and owner.  (Id. ¶ 10.)  On December 6, 2010, Merrick e-mailed Whitaker the terms of a contract between OTRTS and Whitaker.  (Id. ¶ 11.)  Shortly thereafter, Whitaker assigned the '935 Patent to Curtain Cuts and Curtain Cuts' successors and assigns.  (Id. ¶ 12; Doc 1-1 (Patent Assignment).)

On February 4, 2011, Curtain Cuts entered into a Patent License Agreement ("License Agreement") with OTRTS, in which Curtain Cuts is identified as the "Licensor."[1] (Compl. ¶ 14; Doc 1-2 (License Agreement).)  Curtain Cuts executed the License Agreement "[b]y: Jennifer L. Whitaker," whose "[t]itle" was listed as "Owner."  (License Agreement at 8.) The License Agreement stated that the agreement "will be construed in accordance with the substantive laws of the State of New York without regard to its principles of conflicts of law." (License Agreement § 16.1.)

Pursuant to Section 2.1 of the License Agreement, OTRTS was granted an exclusive license under the '935 Patent to make, use, offer to sell, sell and import products related to the '935 Patent.  (Compl. ¶ 17; License Agreement § 2.1.)  In return, pursuant to Sections 3.2 and 3.3 of the License Agreement, OTRTS was obligated to pay a royalty of seven percent of the net sales price of all products sold under the license as well as a royalty of ten percent of the net sales prices for sales made to business, and fifteen percent of the net sales price for sales to individuals.  (Compl. ¶ 17; License Agreement §§ 3.2-3.3.)  Section 4.1 of the License Agreement provided that in addition to the royalty obligations under Sections 3.2 and 3.3, OTRTS was obligated to pay a minimum royalty for the following calendar years as follows:

| Calendar Year | Minimum Royalty, U.S. $ per Calendar Year |
|---|---|
| 2011 | $8,020.81 (or 7% of $114,583.00) |
| 2012 | $18,750.00 (or 7% of $267,847.00) |
| 2013 | $21,250.00 (or 7% of $303,357.00) |
| 2014 | $23,750.00 (or 7% of $339,385.00) |
| 2015 | $26,250.00 (or 7% of $375,000.00) |
| 2016 | $27,500.00 (or 7% of $392,857.00) |

(and each calendar year thereafter during the term of this Agreement.)

---

[1] The Complaint and the motion to dismiss both allege that OTRTS and Curtain Cuts entered into the License Agreement on January 31, 2011, but according to the signature page of the License Agreement, Curtain Cuts only executed the agreement on February 4, 2011.  (License Agreement at 8.)

(Compl. ¶ 18; License Agreement 4.1.)  Section 5.1 of the License Agreement provided that

OTRTS was obligated to pay the minimum royalty for the applicable calendar years on or before

the last day of the following January of the year the minimum royalty is owed.  (Compl. ¶ 19;

License Agreement § 5.1.)

> Section 11 of the License Agreement restricted assignments as follows:
>
> 11.   Nonassignability/Nondelegation
>
> 11.1. [sic] Neither party may assign this Agreement, in whole or in part, without the prior written consent of the other party; provided, however, either party may assign this Agreement to an entity succeeding, whether by sale, merger, or other corporate reorganization, to substantially all of its assets and business activity for which this Agreement has been entered into upon written notice to the other party and assumption by such successor entity of the assigning party's obligations hereunder.  Any attempted assignment in contravention of the foregoing shall be void and of no force or effect.  This Agreement is binding upon and inures to the benefit of the parties hereto and their permitted successors and assigns.

(License Agreement § 11.)

> Section 14 of the License Agreement stated as follows:
>
> 14.   Waiver, Integration, Alteration
>
> . . .
>
> 14.2   This Agreement represents the entire understanding between the parties, and supersedes all other agreements, express or implied, between the parties concerning the Patent.  In entering into this Agreement, no party has relied upon another person's statement, representation, warranty, or agreement except for those expressly contained herein.  The only conditions precedent to this Agreement's effectiveness are those expressly stated herein.
>
> 14.3   A provision of this Agreement may be altered only by a writing signed by both parties, except as provided in Sections 12.1 and 12.2, above [discussing severability.]

(License Agreement § 14.)

Since the execution of the License Agreement in 2011, OTRTS initially paid the required royalties to Curtain Cuts, and after 2012, OTRTS paid the royalties directly to Whitaker upon her request.[2]  (Compl. ¶¶ 20, 25; Ptf. Br. at 9.)

On May 23, 2013, the Commonwealth of Virginia State Corporation Commission voluntarily cancelled Curtain Cuts as a limited liability company.  (Compl. ¶ 13.)

For the calendar years 2014 through 2020, OTRTS did not pay the minimum royalties.  (Id. ¶ 20.)  Instead, OTRTS paid the following amounts:

| Calendar Year | Minimum Royalty | Royalty Paid | Amount Owed |
|---|---|---|---|
| 2014 | $23,750.00 | $12,828.90 | $10,921.10 |
| 2015 | $26,250.00 | $1,851.27 | $24,398.73 |
| 2016 | $27,500.00 | $1,547.81 | $25,952.19 |
| 2017 | $27,500.00 | $3,139.92 | $24,360.08 |
| 2018 | $27,500.00 | $3,820.76 | $23,679.24 |
| 2019 | $27,500.00 | $4,817.55 | $22,682.45 |
| 2020 | $27,500.00 | $4,483.23 | $23,016.77 |

(Id. ¶ 20.)  Whitaker alleges that OTRTS owes her a total of $155,010.56 in minimum royalties for the calendar years 2014 through 2020.  (Id.)  Whitaker has demanded payment from OTRTS of the minimum royalties for this time period, but OTRTS has refused to pay.  (Id. ¶ 31.)

Whitakers alleges that at all relevant times, OTRTS knew of the voluntary cancellation of Curtain Cuts as a Virginia limited liability company and never objected to Whitaker's assumption of all rights, benefits, and obligations of Curtain Cuts pursuant to the terms of the License Agreement.  (Id. ¶ 23.)

---

[2] In the Complaint, Whitaker alleges that OTRTS never paid the required royalties to Curtain Cuts, and only to Whitaker herself.  (Compl. ¶ 26.)  OTRTS, however, argues in its brief that it actually paid Curtain Cuts directly for 2011 and 2012, until Whitaker requested on July 10, 2012 that OTRTS pay the royalties directly to her instead. (Def. Br. at 8 (citing to Benis Decl. Ex. B (business records showing payment to Curtain Cuts)).)  In her opposition brief, Whitaker concedes this point and replies "since 2012, OTRTS paid royalty payments owed pursuant to the License Agreement directly to Whitaker."  (Ptf. Br. at 11.)

MOTION TO DISMISS STANDARD

    A.    <u>Rule 12(b)(6) Standard</u>

        To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them.  <u>Iqbal</u>, 556 U.S. at 678.  Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.  A complaint must include non-conclusory factual allegations that "'nudge[]'" its claims "'across the line from conceivable to plausible.'" <u>Id.</u> at 680 (quoting <u>Twombly</u>, 550 U.S. at 570).

        In addition to a complaint's allegations, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

DISCUSSION

        In this action invoking the Court's diversity jurisdiction, the Court concludes that New York law applies to the present dispute.  Initially, "a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state," here, New York.  <u>AEI Life LLC v. Lincoln Benefit Life Co.</u>, 892 F.3d 126, 132 (2d Cir. 2018).  "Under New York law, 'courts will generally enforce choice-of-law clauses,' . . . because 'contracts should be interpreted so as to effectuate the parties' intent.'" <u>Id.</u> (quoting <u>Minsters & Missionaries Benefit Bd. v. Snow</u>, 26

N.Y.3d 466, 470 (2015)).  "While there is no magical incantation that parties must utter . . . the clause must clearly manifest the parties' intent to be governed by the laws of a particular jurisdiction."  Id.  (citing Welsbach Elec. Corp. v. MasTec N. Am., Inc., 7 N.Y.3d 624, 629 (2006)).  The Court concludes that the License Agreement's "Applicable Law" section clearly manifests the parties' intent to be governed by the laws of the State of New York for purposes of this contractual dispute.[3]  (See License Agreement § 16.1 ("This Agreement will be construed in accordance with the substantive laws of the State of New York . . . .").)

A.      Breach of Contract

In bringing a claim for breach of contract, Whitaker alleges that although she was not an original party to the License Agreement between OTRTS and Curtain Cuts, she succeeded "Curtain Cuts' rights and interests in the License Agreement" as "the successor to Curtain Cuts, the assignee of Curtain Cuts, and/or an intended third-party beneficiary of the Agreement." (Compl. ¶ 30.)  For the reasons below, the Court concludes that Whitaker is neither a successor to Curtain Cuts, an assignee of Curtain Cuts nor an intended third-party beneficiary of the License Agreement.  Accordingly, she has not plausibly alleged a claim for breach of contract against OTRTS, as she has no enforceable right under the License Agreement against OTRTS.

i.      Whether Whitaker Is a Successor to Curtain Cuts

Whitaker argues that she has alleged "sufficient facts to establish that as the owner of the '935 Patent, and the sole owner of Curtain Cuts, [she] is the successor to Curtain Cuts and Curtain Cuts' right to receive royalty payments" under the License Agreement," and that "[i]n particular . . . pursuant to Section 11.1 of the License Agreement, and/or as a matter of law, upon Curtain Cuts' voluntary cancellation as a Virginia limited liability company on or

---

[3] Furthermore, the "parties' briefs assume that New York law controls, and such implied consent [is also] sufficient to establish choice of law" under New York choice-of-law rules.  Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014).

about May 23, 2013, [she,] as Curtain Cuts' successor, succeeded to Curtain Cuts' business, and all of Curtain Cuts' assets, benefits, and contractual rights and obligations."  (Ptf. Br. at 9-10.)

Not so.  A corporate successor "is vested with the rights and duties of an earlier corporation" "through amalgamation, consolidation, or other assumption of interests."  Fleet Nat'l Bank v. Impol Seval Aluminum Rolling Mill Inc., 192 A.D.3d 628, 628 (1st Dep't 2021) (quoting Black's Law Dictionary at 1732 (11th ed. 2019)).  Whitaker, however, "[o]ther than invoking an ownership interest in [Curtain Cuts] . . . never explains the basis for [her] assertion that [she] is [its] successor."  Id.  As such, Whitaker's succession argument, premised solely on her ownership interest in the now-dissolved Curtain Cuts, fails.  Id.  The Court also notes that the Complaint conclusorily states that Whitaker was the successor of Curtain Cuts or that OTRTS "knew and recognized Whitaker was the successor" without explanation.  (See Compl. ¶¶ 13, 16, 23, 30, 39, 41.)  Such legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint may disregard them.  Iqbal, 556 U.S. at 678.  The Court disregards them here.

The Court therefore concludes that Whitaker has not plausibly alleged that she is the successor of Curtain Cuts.

### ii.  Whether Whitaker Is an Assignee of Curtain Cuts

Under the License Agreement, there are two ways for either Curtain Cuts or OTRTS to assign its rights and obligations, "in whole or in part," under the agreement to an assignee.  (License Agreement § 11.1.)  The first method is to obtain "the prior written consent of the other party."  (Id.)  The second method provides that the consent requirement notwithstanding, "either party may assign this Agreement to an entity succeeding, whether by sale, merger, or other corporate reorganization, to substantially all of its assets and business

activity for which this Agreement has been entered into upon written notice to the other party and assumption by such successor entity of the assigning party's obligations hereunder." (Id.) Under New York law, such clear contract provisions that limit a party's ability to assign its rights under the contract are enforceable under law as "valid and effective restriction[s] of the right to assign." Allhusen v. Caristo Constr. Corp., 303 N.Y. 446, 452 (1952). See also C.U. Annuity Serv. Corp. v. Young, 281 A.D.2d 292, 292 (1st Dep't 2001) (citing Allhusen, 303 N.Y. at 446).

As to the first method, Whitaker has not plausibly alleged that Curtain Cuts obtained the prior written consent of OTRTS to designate Whitaker as an assignee of Curtain Cuts, in whole or in part. As to the second method, for the reasons stated above, Whitaker has not plausibly alleged that she is a successor to Curtain Cuts, which precludes assignment by Curtain Cuts under the second method. To the extent Curtain Cuts attempted to formally designate Whitaker as its assignee, the attempted assignment was "in contravention of the" License Agreement's governing provisions and is "void and of no force or effect." (Licensing Agreement § 11.1.)

The Court therefore concludes that Whitaker has not plausibly alleged that she is an assignee of Curtain Cuts under the License Agreement.

Relatedly, Whitaker alleges for the first time in her brief that she is also an assignee of the *claims* arising from the Licensing Agreement, in addition to being an assignee as to the License Agreement generally. (Ptf. Br. at 11-14.) This argument fails for two independent reasons.

First, this new allegation is not contained within the Complaint, and a plaintiff "may not amend [her] complaint through [her] opposition brief." Reading Intern., Inc. v. Oaktree Cap. Mgmt. LLC, 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003) (citing Wright v. Ernst

& Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)).  See also Montesa v. Schwartz, 836 F.3d 176, 191 n.1 (2d Cir. 2016) ("We do not consider this allegation, which appears for the first time in the[] brief.").  This alone precludes Whitaker's success on this theory.  This shortcoming also distinguishes the instant case from Shareholder Representatives Services LLC v. Scribble Technologies Inc., 17-cv-2056 (PKC), 2018 WL 2356659 (S.D.N.Y. Mar. 30, 2018).  In Scribble Technologies, in holding that the contract's anti-assignment clause did not prohibit assignment of claims arising from the contract as opposed to assignment of the contract itself, this Court relied in part on the complaint's clear allegation that the plaintiff was the "assignee for purposes of collection of all right, title[,] and interest in and to all claims relating to or arising out of the Agreement" for some of the stockholders.  Id. at *4 (citing Cortlandt St. Recovery Corp. v. Hellas Telecomm'ns, S.Á.R.L., 790 F.3d 411, 418 (2d Cir. 2015)).  Such an allegation is missing from the Complaint, which cannot be amended by Whitaker's brief here.

        Second, this argument would fail on the merits.  Unlike in Scribble Technologies, where "the Agreement manifest[ed] no . . . concerns regarding the identity of who may sue on a claim in connection with the Agreement," id., here, the License Agreement is explicit.  For example, the License Agreement states that in cases of suspected patent infringement, the "Licensee has the first right to institute suit for infringement(s) so long as this Agreement remains exclusive.  Licensor agrees to join as party plaintiff in any such lawsuit initiated by Licensee, if requested by Licensee, with all costs, attorneys' fees, and expenses to be paid by Licensee.  However, if Licensee does not institute suit for infringement(s) . . . Licensor may, at its own expense, bring suit or take any other appropriate action."  (License Agreement § 9.2.) The License Agreement also contemplates litigation between the two parties to the contract and specifies that "[a]ny cause of action or claim of Licensor accrued, or to accrue, because of any

breach or default by Licensee" shall "survive any termination [of the License Agreement] to the degree necessary to permit their complete fulfillment or discharge."  When read alongside the "Nonassignability" section of the License Agreement, which states that except as to successors in interest, "[n]either party may assign this Agreement, in whole *or in part*, without the prior written consent of the other party," (id. § 11.1 (emphasis added)), the License Agreement, unlike the contract in Scribble Technologies, addresses who may bring claims related to the License Agreement and thus restricts assignment of these parts of the License Agreement regarding litigation.

Accordingly, while the Court need not rule on the issue of whether Whitaker was an assignee of the claims under the License Agreement, even if the argument were properly brought before the Court, it would fail.

Finally, the Court also notes that OTRTS indicated in its March 1, 2021 pre-motion letter that it would seek to dismiss the Complaint, in part, by arguing that Whitaker's claim to be the assignee of Curtain Cuts is refuted by the License Agreement.  (Doc 7 at 4.)  The Court then directed Whitaker on March 8, 2021 to "file a letter stating without ambiguity whether the plaintiff wishes to amend at this time" in response to OTRTS's argument.  (Doc 12.) On March 11, 2021, Whitaker filed a letter to the Court that because she "believes she has stated sufficient facts to support the claims alleged in her complaint, [she] does not seek to amend her complaint at this time."  (Doc 13.)  In other words, Whitaker was on notice of potential deficiencies in her pleading regarding assignment, and consciously chose not to amend her pleading prior to the instant motion to dismiss, such as by including allegations that she was also an assignee as to the claims under the License Agreement.

iii.   <u>Whether Whitaker Is an Intended Third-Party Beneficiary</u>

In addition to arguing that she is a successor to, and an assignee of Curtain Cuts under the License Agreement, Whitaker also argues that she is an intended third-party beneficiary of the License Agreement.  (Ptf. Br. at 9.)

"[A] third party may sue as a beneficiary on a contract made for [its] benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts." <u>Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.</u>, 30 N.Y.3d 704, 710 (2018) (quoting <u>Port Chester Elec. Constr. Corp. v. Atlas</u>, 40 N.Y.2d 652, 655 (1976)).  In other words, "[a] party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [her] benefit and (3) that the benefit to [her] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [her] if the benefit is lost.'" <u>State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling</u>, 95 N.Y.2d 427, 434-35 (2000) (quoting <u>Burns Jackson Miller Summit & Spitzer v. Lindner</u>, 59 N.Y.2d 314, 336 (1983)).  In so reviewing, New York courts "have previously sanctioned a third party's right to enforce a contract in two situations: when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was an 'intent to permit enforcement by the third party.'" <u>Samson</u>, 30 N.Y.3d at 710.

"As to the first ground, [Whitaker] is not the only [one] that can recover under the [Licensing Agreement]" because the License Agreement explicitly empowers Curtain Cuts "the contracting party" to bring "its own breach of contract claim." <u>Id.</u>  That Curtain Cuts is now dissolved as of May 23, 2013 is immaterial to whether the parties' agreement *intended* back in

12

February 4, 2011 for Whitaker, a non-signatory, to be a third-party beneficiary.  The relevant inquiry is whether under the License Agreement, executed when Curtain Cuts was active, Whitaker was the only one who could recover under the Licensing Agreement.  She was not.

"As to the second ground, the [Licensing Agreement] does not expressly name [Whitaker] as an intended third-party beneficiary nor authorize [Whitaker] to enforce any obligations thereunder."  Id. at 710-11.  Unlike in cases where New York courts found such intent to authorize third-party enforcement, here, there were no enumerations or provisions relating to third parties.  See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45 (1985) (collecting cases and noting that a specific contract provision for a rate or price at which a third party could obtain the services or goods at issue would "evidence an intent to permit enforcement").  While a "contract may benefit a third-party"—Whitaker as the owner of Curtain Cuts certainly benefitted financially from the payments OTRTS was obligated to make to Curtain Cuts—"that does not in itself establish enforcement rights in that third party."  Samson, 30 N.Y.3d at 711 (citing Restatement (Second) of Contracts § 302, Comment e, Illustration 19).

The Court therefore concludes that Whitaker has not plausibly alleged that she is a third-party beneficiary of the License Agreement.

    iv. <u>Whitaker Has Not Plausibly Alleged a Claim for Breach of Contract</u>

As noted, Whitaker is not a party to the License Agreement, nor is she a successor to, or assignee of a party to the License Agreement.  Whitaker is also not an intended third-party beneficiary under the License Agreement.  She also does not argue that the contract was otherwise modified.  (Ptf. Br. at 9 ("Whitaker does not allege in the Complaint that there was an oral modification of the License Agreement. . . . None of Whitaker's claims seeks to, or is

dependent upon, a modification of the License Agreement.").)  It follows that "since [Whitaker] had no contractual or other relationship with [OTRTS] and is, at best, only an incidental, rather than an intended, beneficiary of the [License agreement,] . . . [Whitaker] may not recover for . . . breach of contract."  Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 50 A.D.3d 503, 504 (1st Dep't 2008).  See also Residential Bd. of Managers of Zeckendorf Towers v. Union Square-14th Street Assocs., 190 A.D.2d 636, 637 (1st Dep't 1993) ("Absent privity of contract, plaintiff has no right to recover from defendant . . . [for] breach of contract.").

The Court therefore concludes that Whitaker has not plausibly alleged a claim for breach of contract.  Accordingly, OTRTS's motion to dismiss the claim for breach of contract is granted.

B.    Quasi-Contract Claims

As alternative theories of recovery, Whitaker alleges quasi-contract claims against OTRTS for unjust enrichment and quantum meruit.  The Court concludes that even if New York law allows Whitaker, a non-signatory to the License Agreement, to assert a claim for unjust enrichment or quantum meruit, she would not plausibly state a claim for relief.  Accordingly, it is unnecessary to delve into the threshold question of whether New York law would allow a non-signatory to a contract to assert an unjust enrichment or quantum meruit claim related to the subject matter of the existing contract.[4]

---

[4] There has been disagreement in this district on how broadly to interpret Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987), which held that the existence of a valid contract governing a subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter, and New York Appellate Division cases applying Clark-Fitzpatrick.  For example, some judges have interpreted New York law to preclude such quasi-contract claims against non-signatory defendants as well as signatory defendants.  See e.g., Mueller v. Michael Janssen Gallery Pte. Ltd., 225 F. Supp.3d 201, 207 (S.D.N.Y. 2016) (collecting cases).  Others have more narrowly construed Clark-Fitzpatrick to only preclude quasi-contract claims between the signatories of the related contract.  See, e.g., Seiden Assocs., Inc. v. ANC Holdings, Inc., 754 F. Supp. 37, 39 (S.D.N.Y. 1991); Lee v. Kylin Mgmt. LLC, 17-CV-7249 (JMF), 2019 WL 917097, at *2 (S.D.N.Y. Feb. 25, 2019).  The present case presents another variation: a non-signatory plaintiff's quasi-contract claims against a signatory defendant.  But as noted, it is unnecessary to resolve this ambiguity here.

i.    <u>Whether Whitaker Has Plausibly Alleged a Claim for Unjust Enrichment</u>

Whitaker has not plausibly alleged a claim for unjust enrichment.

Under New York law, a plaintiff bringing a claim for unjust enrichment "must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 182 (2011) (internal quotation marks omitted).  Of these three factors, "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  <u>Id.</u> (internal quotation marks omitted).

The Court notes that OTRTS has still been paying Whitaker for using the '935 Patent, even after the 2013 dissolution of Curtain Cuts, the only party OTRTS was contractually obligated to make royalty payments to.  (Compl. ¶ 20.)  It is unclear from the Complaint whether the payments she received equaled seven percent of the sales by OTRTS using the '935 Patent, as OTRTS alleges in its brief.  (Def. Br. at 22.)  But it is clear, as noted above, that while Whitaker does not have an enforceable contract claim against OTRTS, OTRTS has continued to pay her money even after its contractual counterparty Curtain Cuts dissolved.  In light of this, it would not be against equity and good conscience to deny Whitaker the approximately $155,010.56 in "minimum royalties" that she claims is owed—the same minimum royalties that are no longer contractually required.

The Court therefore concludes that Whitaker has not plausibly alleged a claim for unjust enrichment.  Accordingly, the motion to dismiss the claim for unjust enrichment is granted.

15

ii.   Whether Whitaker Has Plausibly Alleged a Claim for Quantum Meruit

Similarly, Whitaker has not plausibly alleged a claim for quantum meruit.

Under New York law, a plaintiff bringing a claim for quantum meruit must show: "performance of services in good faith, acceptance of the services by the person to whom they are rendered, an expectation of compensation therefor, and the reasonable value of the services." Freedman v. Pearlman, 271 A.D.2d 301, 304 (1st Dep't 2000).

First, it is unclear what actions Whitaker has taken in good faith.  She freely assigned her patent rights to Curtain Cuts, and in doing so, freely accepted the benefit of doing business as a limited liability company.  The Complaint does not allege that Whitaker did anything to benefit OTRTS as licensee following the dissolution of Curtain Cuts.  For the contested years of 2014 through 2020, it does not appear that Whitaker took any actions for, or as to OTRTS apart from demanding additional royalty fees from OTRTS.  As noted, OTRTS did not, and does not owe a contractual duty to Whitaker, who is neither a party to the License Agreement, a successor to Curtain Cuts, an assignee of Curtain Cuts, nor an intended third-party beneficiary of the License Agreement.

Separately, Whitaker fails to allege in her complaint, beyond the conclusory, why the seven percent royalties OTRTS paid Whitaker for 2014 to 2020 do not represent the reasonable value of whatever services she provided to OTRTS from 2014 to 2020.

The Court therefore concludes that Whitaker has not plausibly alleged a claim for quantum meruit.  Accordingly, the motion to dismiss the claim for quantum meruit is granted.

CONCLUSION

The Court has considered all the arguments of the parties, whether or not they are expressly referenced here.  OTRTS's motion to dismiss the Complaint is GRANTED.  The Clerk

is respectfully directed to terminate the motion (Doc 16), enter final judgment in favor of

OTRTS and close the case.


SO ORDERED.


P. Kevin Castel
United States District Judge


Dated:  New York, New York
        March 14, 2022